FILED

07/07/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0615

DA 25-0615

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 145

IN RE THE MARRIAGE OF:

TARALYN DECOCK,

> Petitioner and Appellant,

and

DEAN DECOCK,

> Respondent and Appellee.

APPEAL FROM: District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DR-1-2023-14006
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Marybeth M. Sampsel, Measure Law, PC, Kalispell, Montana

For Appellee:

Lori A. Harshbarger, Kylee A. Vara, Harshbarger Law Firm, Twin Bridges, Montana

Submitted on Briefs: March 25, 2026

Decided: July 7, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Taralyn DeCock (Taralyn) appeals from the August 25, 2025 deemed denial of her M. R. Civ. P. 60(b)(6) motion for relief from the Findings of Fact, Conclusions of Law, and Final Decree of Dissolution ordered by the Fifth Judicial District Court, Beaverhead County, on February 25, 2025. Taralyn asserts the District Court's deemed denial of her Rule 60 motion was an abuse of discretion and that she is entitled to relief on account of the gross neglect of her prior counsel. Specifically, Taralyn argues that counsel failed to provide her with information regarding her spouse's retirement assets prior to mediation, which resulted in a distribution of assets that "shocks the conscience." Additionally, Taralyn argues the District Court's October 31, 2024 order denying her motion to rescind the Marital and Property Distribution Agreement (MPSA) constitutes reversible error, as the agreement was unconscionable. Further, Taralyn asserts the District Court failed to fulfill its statutory duty to ensure an equitable distribution of assets when it adopted the MPSA into its final decree of dissolution. Taralyn, however, filed her Notice of Appeal on August 29, 2025, 185 days after the District Court issued its final decree of dissolution. While her appeal is timely as to the denial of her Rule 60 motion, her appeal of the District Court's final decree of dissolution is not.[1] Accordingly, we restate the sole issue on appeal as follows:

---

[1] Under M. R. App. P. Rule 4(5)(a)(i), notice of appeal in civil cases "shall be filed with the clerk of the supreme court within 30 days from the date of entry of the judgment or order from which the appeal is taken." Accordingly, Taralyn's appeal of the District Court's final decree, which she bases on allegations that the District Court erroneously denied her motion to rescind the MPSA and failed to ensure an equitable distribution of assets under § 40-4-202, MCA, is untimely.

*Whether the District Court abused its discretion when it denied Taralyn's Rule 60(b)(6) motion.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 This case arises from the dissolution of a fifteen-year marriage between Taralyn and Dean DeCock (Dean). The parties were married in Bozeman, Montana, on June 27, 2009. Around October 1, 2023, Taralyn moved out of the couple's marital home in Dillon, Montana, along with their two minor children. On November 13, 2023, Taralyn filed a petition for dissolution of marriage.

¶3 On February 15, 2024, Taralyn—through counsel—was served Dean's initial financial disclosures, which provided an accounting of Dean's assets and liabilities. Under "Retirement Benefits," the disclosure specifically referenced the following assets: Social Security, valued at $333,536.00; Newmont (Newmont Pension), valued at $127,825.43; Fidelity (Covia Retirement), valued at $152,615.19; John Hancock (MTI Savings Plan), valued at $81,350.42; Edward Jones (Roth IRA), valued at $139,872.39; and Edward Jones (IRA Advisory Solutions Fund), valued at $278,964.59.

¶4 On March 5, 2024, Taralyn and Dean, along with their respective counsels, participated in mediation. According to Dean, prior to meeting, counsel for Taralyn requested that hard copies of Dean's financial disclosures be distributed at mediation, including account statements pertaining to Dean's retirement assets. The parties met from

However, Taralyn's appeal of the District Court's August, 25, 2025 deemed denial of her Rule 60(b)(6) motion is timely, as her Notice of Appeal was filed only 4 days later.

10:00 a.m. to 3:12 p.m. and copies of both the disclosures and statements were provided.[2]

The mediator, Pat Gallagher, also had copies of the financial disclosures for both parties.

Though the parties were unable to resolve certain issues related to the parenting plan, the

parties did reach an agreement as to all marital and property settlement issues. An

agreement—the MPSA—entitled "Marital and Property Distribution Agreement" was

executed and signed by both Taralyn and Dean and filed with the District Court that day.

¶5      In the recitals, the MPSA provides the following:

D.      The parties wish to effectuate an amicable settlement of the disposition of real and personal property and the payment and/or assumption of debts.

E.      When the Decree of Dissolution is entered, it is the intention of the parties that this Agreement be determined by the [c]ourt to be fair and equitable, and it is specifically intended by the parties hereto that this Agreement be incorporated into the Decree of Dissolution of marriage that will be entered in the Fifth Judicial District Court, Beaverhead County.

F.      The parties have made initial disclosures and explicitly waive final financial disclosures.

G.      This Agreement is voluntary. Each of the parties have read and approved this Agreement.

The MPSA then proceeds to outline the disposition of marital assets, including the

disposition of vehicles and recreational property, real estate, business, bank accounts,

personal property, and retirement accounts. Regarding retirement accounts, the MPSA

specifically provides:

---

[2] Taralyn does not dispute that financial disclosures and account statements were available for review at mediation.

5.  **Retirement Accounts/Life Insurance:**
    a. Each party shall retain the retirement accounts and Social Security in their own name unless specified as follows;
    a.  Dean shall retain the following:
        1.  Newmont Pension
        2.  Newmont Company Stocks
        3.  Newmont Investment Stocks
        4.  Covia Retirement (Fidelity)
        5.  MTI Savings Plan 401K JH
        6.  Roth IRA (Edward Jones)
        7.  IRA Advisory Solutions Fund (Edward Jones)
        8.  Community Property WROS Select (Edward Jones)
    b.  Taralyn shall receive the following, and the parties shall effectuate exchange of personal items through counsel within 30 days of execution of this agreement;
        1.  NV TOD
        2.  CB&T IRA
        3.  CB&T Roth
        4.  $139,000 from Dean's Edward Jones Roth IRA. Dean shall transfer $139,000 of the balance of his Edward Jones Roth IRA to Taralyn via a Qualified Domestic Relations Order. Taralyn shall designate the qualified account into which she requests the funds be transferred. If Taralyn is unable to obtain the full amount of this cash due to any "penalty" or taxes, Dean shall pay in cash the difference. This is specifically done to evenly distribute the retirement funds, but allow them both to have the most available cash, rather than Taralyn retrieving less in retirement funds, or Dean from having less equity in the home.
        5.  Taralyn shall receive $15,000 from a retirement account of Dean's designation via a Qualified Domestic Relations Order. . . .

With regard to all marital assets, the MPSA further provides:

7.  Each party acknowledges that all assets have been disclosed, and each party accepts the values placed upon the disclosed assets. The parties agree to waive any final disclosure.

.   .   .

9.  All assets have been divided and the parties agree that division is fair and equitable.

5

Similarly, regarding marital debts, the MPSA states "the parties have disclosed their marital debt" and "waive any final disclosure."

¶6 A non-modification clause is also included in the MPSA, specifically stating, "Neither this Agreement nor any portion hereof may be waived, modified, or amended except by a writing executed by both parties." Further, the MPSA waives the parties' right to a hearing and expresses the parties' consent to the immediate entry of a decree of dissolution, stating:

> **J.** **Waiver of Hearing and Consent to Entry of Decree.** Both parties expressly and knowingly hereby waive all further notice and their right to a hearing on the merits of all issues resolved herein and consent to an immediate entry of an order by decree consistent in its entirety with the terms of this Agreement.

¶7 On March 6, 2024, the mediator filed a Settlement Conference Report with the District Court, in which he noted "[t]he parties met in good faith and reached an agreement on marital and property settlement issues," and that "[t]he marital and property issues are resolved."

¶8 In the weeks following the mediation, Taralyn retained new counsel who was provided with Dean's financial disclosures on April 2, 2024. On May 10, 2024, Taralyn filed a Motion for [Rescission], Contempt, Sanctions, Temporary Maintenance, Temporary Child Support and to Collect Personal Property from the Marital Home. Taralyn argued, among other things not relevant to this appeal, that the MPSA should be rescinded because its terms are unconscionable. Taralyn claimed her attorney never informed her of Dean's financial disclosures or gave her an opportunity to review the disclosures and account

6

information before attending mediation. Thus, according to Taralyn, because her attorney failed to apprise her of all of Dean's assets, the MPSA was the result of her "unconscious ignorance," and she would suffer a compelling injustice if it were allowed to stand because, under its terms, Dean would receive $1,800,000 while she would only receive $329,350.13. Taralyn further argued rescission was warranted because the MPSA did not provide an equitable distribution of assets and therefore violated § 40-4-202, MCA.

¶9      The District Court denied Taralyn's motion to rescind the MPSA, pointing to specific language in the MPSA which contradicted her claim as to being unaware of Dean's assets at the time of signing. The District Court noted that the agreement expressly referenced the disputed assets, and the court also cited numerous provisions in which the parties attested to having "read and approved [the] Agreement" and "made initial disclosures and explicitly waive[d] final disclosures." Given that Taralyn was aware of the assets at the time of signing and did not allege that Dean hid assets from her during the negotiating process, the District Court concluded the MPSA was not unconscionable.

¶10     Following the court's denial of her motion to rescind, on February 24, 2025, Taralyn executed a Joint Affidavit for Entry of Decree and Waiver of Hearing. In the affidavit, Taralyn swore under penalty of perjury that the MPSA "fully resolves" the disposition of all property and debts of the parties, as well as the maintenance of either spouse. She attested to signing the MPSA "because [she] believe[s] it to be in [her] own respective best interests," and that she believes the disposition of property and debts it sets forth "are not unconscionable and constitute a fair and equitable apportionment of their marital estate." The affidavit further provided that "the Parties desire that the [c]ourt adopt the [MPSA]

7

and Parenting Plan entered into and filed herein as part of the final Decree of Dissolution of Marriage" and "waive the right to appear personally in [c]ourt to present testimony as to any matters and request the [c]ourt enter the proposed Final Decree by Affidavit in lieu of a hearing before the [c]ourt."

¶11 On February 25, 2025, the District Court issued its Findings of Fact, Conclusions of Law and Decree of Dissolution. The District Court's order reflected the language of the parties' joint affidavit.

¶12 On June 26, 2025, 121 days after the District Court's order, Taralyn filed a Rule 60(b)(6) motion for relief from judgment. Taralyn argued that her former counsel's failure to provide her with information regarding Dean's retirement accounts constituted gross neglect which contributed to an unconscionable result, which is an extraordinary circumstance warranting relief under Rule 60(b)(6). Taralyn claimed her former counsel had represented "that [the parties'] respective retirement accounts were essentially a 'wash' because they were approximately equal in value," that she only knew of Dean's retirement accounts with Edward Jones, and that she "did not learn that this information was incorrect until nearly two months after our settlement agreement was executed." The District Court did not rule on Taralyn's motion and it was deemed denied by default on August 25, 2025. Taralyn appeals.

**STANDARD OF REVIEW**

¶13 Our review of a district court's ruling on a motion pursuant to M. R. Civ. P. 60(b) depends on the nature of the final judgment, order, or proceeding from which relief is sought and the specific basis of the Rule 60(b) motion. *In re Marriage of Orcutt*, 2011 MT

8

107, ¶ 5, 360 Mont. 353, 253 P.3d 884. Generally, we review a district court's ruling on a Rule 60(b) motion for an abuse of discretion, though there are exceptions when motions are made under Rule 60(b)(2), (b)(4), or where relief from a default judgment is sought. *Orcutt*, ¶ 5. Under the facts of this case, the abuse of discretion standard applies.

¶14 A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *Orcutt*, ¶ 5.

## DISCUSSION

¶15 *Whether the District Court abused its discretion when it denied Taralyn's Rule 60(b)(6) motion.*

¶16 It is the public policy of the State of Montana to "promote the amicable settlement of disputes that have arisen between parties to a marriage." Section 40-4-101(2), MCA; *Tanascu v. Tanascu*, 2014 MT 293, ¶ 14, 377 Mont. 1, 338 P.3d 47. Accordingly, state law encourages the use of written settlement agreements "containing provisions for disposition of any property owned by either [party]." Section 40-4-201(1), MCA. The terms of a separation agreement regarding the disposition of property are "binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties . . . that the separation agreement is unconscionable." Section 40-4-201(2), MCA. "The rule is well reasoned that persons must be able to separate amicably and divide their property without interference where such division is feasible." *Miller v. Miller*, 189 Mont. 356, 362-63, 616 P.2d 313, 318 (1980). Thus, "[i]t is not the province of this Court to alter decisions and agreements made between

husband and wife in the absence of compelling injustice." *Miller*, 189 Mont. at 363, 616 P.2d at 318.

¶17 Rule 60 provides a means by which a litigant may seek relief from a judgment or order, balancing the competing interests of finality and substantial justice. *In re Marriage of Remitz*, 2018 MT 298, ¶ 11, 393 Mont. 423, 431 P.3d 338. The rule enumerates five specific bases for relief, as well as a catch-all provision mutually exclusive of the first five subsections. *See* M. R. Civ. P. 60(b); *Orcutt*, ¶ 9. Accordingly, Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason justifying relief from the operation of the judgment.

M. R. Civ. P. 60(b).

¶18 Taralyn seeks relief based on subsection (6), the catch-all provision. Taralyn asserts that counsel's failure to inform her of Dean's retirement assets prior to mediation resulted in an inequitable and unfair distribution of assets pursuant to the terms of the MPSA that "shocks the conscience."

10

¶19    To be entitled to relief under Rule 60(b)(6), a movant must prove "extraordinary circumstances which go beyond those covered by the first five subsections." *Orcutt*, ¶ 10. However, Rule 60(b)(6) is not intended as a substitute for appeal; the motion "must be more than a request for rehearing or a request for the district court to change its mind." *Orcutt*, ¶ 10. Thus, Rule 60(b)(6) requires the movant to show "that something prevented a full presentation of the cause or an accurate determination of the merits that for reasons of fairness and equity redress is justified." *Orcutt*, ¶ 11. Rule 60(b)(6) "is designed to be applied primarily as an exception to the finality of a judgment where a party was wronged through no fault of its own." *Wagenman v. Wagenman*, 2016 MT 176, ¶ 11, 384 Mont. 149, 376 P.3d 121 (quoting *In re Marriage of Hopper*, 1999 MT 310, ¶ 29, 297 Mont. 225, 991 P.2d 960). Thus, in addition to showing extraordinary circumstances, a movant must also show they were blameless and acted within a reasonable amount of time. *Wagenman*, ¶ 12.

¶20    In *Lussy v. Dye*, 215 Mont. 91, 695 P.2d 465 (1985), we considered whether Rule 60(b)(6) relief from an order dismissing a complaint on statute of limitation grounds was appropriate when the motion was premised on the movant's contention that the action was not in fact barred by the applicable statute of limitations period. *Lussy*, 215 Mont. at 93, 695 P.2d at 466. We affirmed the district court's denial, concluding that the litigant was "attempt[ing] to apply Rule 60(b)(6) because the order from which relief was sought was allegedly erroneous." *Lussy*, 215 Mont. at 93, 695 P.2d at 466. We reasoned that "for the sake of the litigants and the judicial system . . . [w]hen the time for appeal has elapsed and no grounds justify other relief[,] the case is final as to all matters properly appealable."

11

*Lussy*, 215 Mont. at 93, 695 P.2d at 466. Thus, "the proper avenue for seeking redress from an allegedly erroneous decision, solely on the basis that it is erroneous, is the appeal process." *Lussy*, 215 Mont. at 93, 695 P.2d at 466.

¶21 Similarly, in *Estate of Kinnaman v. Mt. W. Bank, N.A.*, 2016 MT 25, 382 Mont. 153, 365 P.3d 486, we affirmed a district court's denial of a Rule 60(b)(6) motion seeking relief from summary judgment in which the movant argued the district court had erroneously taken judicial notice of certain facts. *Estate of Kinnaman*, ¶ 29. We concluded, however, that the motion "was essentially a request for the [d]istrict [c]ourt to change its mind," and reiterated the district court's assertion that "[m]ere allegations do not constitute an 'extraordinary circumstance,'" as required under Rule 60(b)(6), "when the moving party had an opportunity to argue, and did argue, before the [d]istrict [c]ourt." *Estate of Kinnaman*, ¶ 31.

¶22 Here, like the movants in *Lussy* and *Estate of Kinnaman*, Taralyn is attempting to use Rule 60(b)(6) as a substitute for appeal; her motion is based on nothing more than a request for the District Court to change its mind regarding her motion to rescind the MPSA. Just as in her motion to rescind, Taralyn argues that due to her attorney's conduct, she signed the MPSA without full knowledge of Dean's retirement assets, which resulted in unconscionable terms and an inequitable and unfair distribution of assets. The only conceivable difference between the two motions, other than their respective framings, is that Taralyn now alleges her attorney "lied" to her about Dean's assets by telling her "nothing significant" was revealed in discovery, whereas in her motion to rescind, she

12

merely alleged that her attorney failed to inform her of Dean's assets and never gave her an opportunity to review his financial disclosures prior to mediation.

¶23 On appeal, Taralyn attempts to distinguish the issues raised in her motion to rescind the MPSA with those raised in her Rule 60(b)(6) motion as "fundamentally different," arguing that the motion to rescind "sought contract-based relief before entry of the Final Decree[,] . . . challeng[ing] the MPSA itself under theories of unconscionability and mistake," whereas her Rule 60(b)(6) motion sought "post-judgment relief based on the extraordinary circumstances of attorney gross neglect." According to Taralyn, the two motions are based on "distinct legal theories with distinct elements, available at distinct procedural stages." Taralyn, however, elevates form over substance and ignores that the two motions are based on the same facts and the same legal theory; her attorney's conduct allegedly resulted in the MPSA including unconscionable terms as to the distribution of the parties' property. To be sure, Taralyn would only be afforded relief under Rule 60(b)(6) upon the court finding the MPSA unconscionable. *See* § 40-4-201(2), MCA ("in a proceeding for dissolution of marriage or legal separation, the terms of the separation agreement, except those providing for the support, parenting, and parental contact with children, *are binding upon the court unless it finds . . . the separation agreement is unconscionable*") (emphasis added).

¶24 Taralyn's Rule 60(b)(6) motion does not identify any new injury or new factual basis, nor does it set forth a post-judgment circumstance warranting extraordinary relief. Taralyn has not shown that something interfered with an accurate adjudication of the merits of her claims, or that something prevented her from making a full presentation of her case.

13

Instead, Taralyn merely recharacterizes the contentions raised in her motion for rescission—contentions which the District Court already considered and rejected. If Taralyn believed the District Court erred in denying her motion to rescind the MPSA, the proper avenue for relief was a direct appeal from the District Court's final decree of dissolution. Rule 60(b)(6) simply does not permit a movant to relitigate an issue already decided upon simply by recasting the same facts under a different label. Accordingly, the District Court did not abuse its discretion in denying post-judgment relief under Rule 60(b)(6).

¶25 However, even if Taralyn was not attempting to use Rule 60(b)(6) to relitigate the motion to rescind, Taralyn would still not be entitled to relief because she was not blameless as to the circumstances of the judgment. Taralyn not only had an opportunity to review Dean's retirement assets at mediation, but the MPSA—which she signed—directly referenced Dean's retirement assets and expressly stated that Taralyn: "acknowledges that all assets have been disclosed," "accepts the values placed upon the disclosed assets," "agree[s] to waive any final disclosure," and "agree[s] that division is fair and equitable." Further, on February 24, 2025—months after the District Court ruled on her motion to rescind—Taralyn filed a joint affidavit in which she (1) attested to the MPSA as fair and equitable, (2) averred that the terms of the MPSA were not unconscionable, (3) declared the MPSA and Stipulated Parenting Plan to "fully resolve the issue[] of . . . Disposition of all property and debts of the Parties," and (4) expressly requested the District Court to adopt the MPSA in its final decree of dissolution. A day later, on February 25, 2025, the

14

District Court issued its Findings of Fact, Conclusions of Law, and Final Decree of Dissolution based on the averments Taralyn set forth in the Joint Affidavit.

¶26 While Taralyn asserts in her reply brief, "the execution of the Joint Affidavit after the rescission motion was denied does not establish that Taralyn was blameworthy for the original deception that occurred at mediation," this interpretation of Rule 60(b)(6)'s blamelessness requirement is far too narrow. Rule 60(b)(6) requires a movant to be blameless as to the circumstances underlying a judgment, not merely blameless as to the attorney's alleged misconduct or gross neglect. *See Matthews v. Don K Chevrolet*, 2005 MT 164, ¶ 19, 327 Mont. 456, 115 P.3d 201 (holding client not blameless in default judgment even though attorney failed to respond to a complaint due to a filing mix up involving a similar action where the record established client was aware of the claim and had deliberately opposed consolidating it with other similar claims, noting that it would be "incongruous" for client to seek relief based on attorney's conduct "when it was [client's] litigation strategy which spawned the multiple suits in the first place"); *Griffin v. Scott*, 218 Mont. 410, 413, 710 P.2d 1337, 1339 (1985) (holding client not blameless with regard to default judgment even though attorney had failed to respond to the complaint due to being weeks behind on mail where client had only mailed the complaint and summons to attorney two weeks before an appearance was due and nothing in the record showed that clients had informed attorney of the matter needing prompt attention); *cf. Orcutt*, ¶ 16 (holding client blameless as to the district court's decree of dissolution where the only issue before the court was the value of the marital home and, despite client supplying attorney

15

with evidence regarding the value of the home, attorney ultimately failed to present any evidence on the issue).

¶27 The District Court's final decree of dissolution was ordered on February 25, 2025—just one day after the Joint Affidavit was filed—and was premised on the averments set forth by Taralyn in the Joint Affidavit. Taralyn made such averments with full knowledge of Dean's assets. It is incongruous for Taralyn to seek relief on account of counsel's failure to inform her of Dean's retirement assets prior to mediation when Taralyn herself—with full knowledge of Dean's assets—deliberately sought the incorporation of the MPSA into the final decree and attested to its terms as not unconscionable and the distribution of assets as fair and equitable. Accordingly, Taralyn is not blameless and is not entitled to relief under Rule 60(b)(6).

## CONCLUSION

¶28 Taralyn not only inappropriately used Rule 60(b)(6) as a substitute for appeal, but she failed to establish she was blameless in the circumstances of the underlying judgment. Accordingly, the District Court did not abuse its discretion in deeming Taralyn's Rule 60(b)(6) motion denied. Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

16